UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| BARNEY R. HOWARD, JR., ) | Civil Action No.: 4:21-cv-02378-TER |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | **ORDER** |
| Kilolo Kijakazi, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, partially granting and partially denying Plaintiff's claim for disability insurance benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This action is proceeding before the undersigned pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. Proc. R. 73.

### I. RELEVANT BACKGROUND

**A.     Procedural History**

Plaintiff filed an application for DIB on July 31, 2019, alleging inability to work since May 2016. (Tr. 25). His claims were denied initially and upon reconsideration. Thereafter, Plaintiff filed a request for a hearing. A hearing was held in December 2020, at which time Plaintiff and a vocational expert (VE) testified. (Tr. 25). The Administrative Law Judge (ALJ) issued a partially favorable decision on January 27, 2021, finding that Plaintiff was "disabled under sections 216(i) and 223(d) of the Social Security Act, from May 26, 2016 through January 29, 2020, but has not been disabled from January 30, 2020 through the date of this decision." (Tr. 40). The Appeals

Council denied review in June 2021. (Tr. 1-3). In July 2021, Plaintiff filed this action. (ECF No. 1).

**B.     Plaintiff's Background**

Plaintiff was born on January 26, 1974, and was forty-two years old on the alleged onset date. (Tr. 79). Plaintiff completed his education through high school and has past relevant work experience as a fire chief, deputy fire chief, fire inspector, assistant fire chief, and firefighter. (Tr. 92). Relevant medical records will be summarized under pertinent issue headings.

**C.     The ALJ's Decision**

In the decision of January 27, 2021, the ALJ made the following findings of fact and conclusions of law (Tr. 25-40):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since May 26, 2016, the date the claimant became disabled (20 CFR 404.1520(b), 404.1571 *et seq.*).

3. From May 26, 2016 through January 29, 2020, the period during which the claimant was under a disability, the claimant had the following severe impairments: cervical and lumbar degenerative disk disease; obesity; migraine headaches; post-traumatic stress disorder (PTSD); depression; and anxiety. (20 CFR 404.1520(c)).

4. From May 26, 2016 through January 29, 2020, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, from May 26, 2016 through January 29, 2020, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: occasional reaching overhead with bilateral upper extremities; frequent, but not constant, fine and gross manipulation with bilateral upper extremities; must avoid concentrated exposure to more than moderate noise, temperature extremes, and hazards;

        and would be unable to maintain concentration and focus for even unskilled work as he would be off task for 1/3 of the workday.

6. From May 26, 2016 through January 29, 2020, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was a younger individual age 18-44, on the established disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. The claimant's acquired job skills do not transfer to other occupations within the residual functional capacity defined above (20 CFR 404.1568).

10. From May 26, 2016 through January 29, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was under a disability, as defined by the Social Security Act, from May 26, 2016 through January 29, 2020 (20 CFR 404.1520(g)).

12. The claimant has not developed any new impairment or impairments since January 30, 2020, the date the claimant's disability ended. Thus, the claimant's current severe impairments are the same as that present from May 26, 2016 through January 29, 2020.

13. Beginning January 30, 2020, the claimant has not had an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

14. Medical improvement occurred as of January 30, 2020, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

15. The medical improvement that has occurred is related to the ability to work because there has been an increase in the claimant's residual functional capacity (20 CFR 404.1594(b)(4)(i)).

16. After careful consideration of the entire record, the undersigned finds that, beginning January 30, 2020, the claimant has had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following additional limitations: never climbing ladders, ropes, or scaffolds;

        occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; occasional reaching overhead with bilateral upper extremities; frequent, but not constant, find and gross manipulation with bilateral upper extremities; must avoid concentrated exposure to more than moderate noise, temperature extremes, and hazards; limited to simple, routine tasks in an unskilled work environment for 2 hours throughout an 8-hour day.

17. The claimant is unable to perform past relevant work (20 CFR 404.1565).

18. Since January 30, 2020, the claimant's age category has changed to a younger individual age 45-49. (20 CFR 404.1563).

19. The claimant's education level has not changed (20 CFR 404.1564).

20. Beginning January 30, 2020, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

21. Beginning January 30, 2020, considering the claimant's age, education, work experience, and residual functional capacity, there have been jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).

22. The claimant's disability ended January 30, 2020, and the claimant has not become disabled again since that date (20CFR 404.1594(f)(8)).

## II. DISCUSSION

Plaintiff argues that the "improvement RFC" found by the ALJ differs in what was omitted as compared to the "disabled RFC," specifically as to migraines. Plaintiff argues the "improvement RFC" contains no restriction/limitation that would account for the severity, frequency, and duration of Plaintiff's migraines. (ECF No. 16 at 24). Plaintiff cites SSR 19-3p. Plaintiff argues there was no discussion of concentration issues using the January 2020 improvement date and no explanation regarding the removal of the off task 1/3 of the work day that existed in the "disabled RFC"

limitation. (ECF No. 16 at 26).

Plaintiff argues the ALJ's finding of the medical improvement date based on the Worker's Compensation exam in January 2020 was based on faulty assumptions/evidence because Plaintiff had received a medial branch block 15 days before the exam for short term temporary pain relief and as a diagnostic to determine the source of pain from a specific vertebrae. Plaintiff argues the exam did not present a baseline situation nor did the significant reduction in pain last after January 2020. (ECF No. 16 at 21-22). Plaintiff also argues the RFC failed to account for use of a cane in dominant hand when walking and numbness that precludes fine fingering. (ECF No. 16 at 25). Plaintiff argues the RFC of light is unsupported. Plaintiff argues his medical chart contains opinions of sedentary. (ECF No. 16 at 27-28). Plaintiff argues the ALJ erred in the subjective symptom evaluation. (ECF No. 16 at 29).

Defendant argues the ALJ provided support for the findings and properly accommodated all "credibly established limitations." (ECF No. 18 at 1).

**A.     LEGAL FRAMEWORK**

**1.     The Commissioner's Determination–of–Disability Process**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). Section 423(d)(1)(A) defines disability as: the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months. 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated

under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting the "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is engaged in substantial gainful activity ("SGA"); (2) whether he has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[1] (4) whether such impairment prevents claimant from performing PRW;[2] and (5) whether the impairment prevents him from doing SGA. *See* 20 C.F.R. § 404.1520. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. See 20

---

[1] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

[2] In the event the examiner does not find a claimant disabled at the third step and does not have sufficient information about the claimant's past relevant work to make a finding at the fourth step, he may proceed to the fifth step of the sequential evaluation process pursuant to 20 C.F.R. § 404.1520(h).

C.F.R. Subpart P, § 404.1520(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that he is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner [ ] made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*; *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls*, 296 F.3d at 290 (*citing Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases *de novo* or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir.1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the

court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings and that her conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     ANALYSIS

**Migraine Headaches**

The ALJ found Plaintiff had the severe impairment of migraine headaches from May 2016 to January 2020. (Tr. 29). Plaintiff was found disabled under an RFC that included: "must avoid concentrated exposure to more than moderate noise, temperature extremes, and hazards; and would be unable to maintain concentration and focus for even unskilled work as he would be off task for 1/3 of the workday." (Tr. 30). Plaintiff's alleged onset date originates as a result of his proximity to a rocket explosion attack in Afghanistan in May 2016; doctors noted it was a miracle he had no shrapnel wounds. (Tr. 650, 388).

As of January 30, 2020, the ALJ found Plaintiff was no longer disabled and found the impairments from the prior findings in the same decision remained the same, i.e. migraines continued to be a severe impairment after January 2020 as well. (Tr. 34). The ALJ found medical improvement based on the January 29, 2020 FCE, but the ALJ cited only physical findings as to lifting, walking, climbing, reaching, and fingering/grasping from the FCE. (Tr. 36). Of note,

Plaintiff's disabled RFC has a 1/3 off task finding as well as environmental restrictions related to Plaintiff's migraines. The "improved" RFC had physical limitation changes but also included only a limitation to "simple, routine tasks in an unskilled work environment for 2 hours throughout an 8-hour day." (Tr. 37).

In the RFC narrative, as to migraines, the ALJ stated:

> From March 2020 to November 2020, the claimant saw providers at Pain Specialists of Charleston for treatment of migraine headaches and post-concussion syndrome. The claimant reported that Ambien helped his sleeping patterns. He reported that Aimovig and Imitrex helped his headaches. He noted having a worsening of his migraines only with weather changes. (Exhibit 31F).

(Tr. 37). The ALJ then focused on the January 2020 physical FCE. (Tr. 37-38).

SSR 19-4p, titled Evaluating Cases Involving Primary Headache Disorders, provides: "We must consider and discuss the limiting effects of all impairments and any related symptoms when assessing a person's RFC." SSR 19-4p at *7 (answering the titled question, "How do we consider an MDI of a primary headache disorder in assessing a person's [RFC]?"). An example is given that symptoms of such MDI may "cause a person to have difficulty sustaining attention and concentration. Consistency and supportability between reported symptoms and objective medical evidence is key in assessing the RFC." SSR 19-4p, *8.

The ALJ's only citation as to migraines is Exhibit 31F. It is not apparent in the decision whether the ALJ considered the frequency or duration of the migraines contained in Plaintiff's treatment records. (Tr. 37). In December 2019, one month before improvement was found by the ALJ, Plaintiff was seen by PA Barsan of Pain Specialists of Charleston. Plaintiff stated Aimovig helped with the headaches. "The frequency of headaches is presently 1 headache every day. Headaches are associated with phonophobia, photophobia, [and] nausea." "Headaches typically last

9

days." (Tr. 1853). Assessment was postconcussional syndrome and chronic migraine without aura, not intractable. (Tr. 1853). Imitrex was held until Plaintiff could follow up about blood pressure. (Tr. 1854). Aimovig was an injection. (Tr. 1854).

In March 2020, after the medical improvement January date found by the ALJ, Plaintiff was seen by Dr. Stickler. "The frequency of headaches is presently 10-12 headaches every month. Headaches are associated with phonophobia, photophobia, nausea, [and] vomiting." "Current headache medication provides significant improvement." Comparing the two treating notes, before Aimovig Plaintiff had a headache every day of the month and now Plaintiff had headaches about half the days of the month. (Tr. 1850).

In June 2020, Plaintiff was seen by Dr. Stickler; "Patient states he has increased headaches; he believes that the migraines may be increased due to the weather. Patient continues to have migraines but has 10-20 days of relief from Aimovig." (Tr. 1848). Plaintiff was assessed as "stable but with persistent headaches." (Tr. 1848).

In September 2020, Plaintiff was seen by Dr. Stickler. "Patient states he has increased headaches he believes that the migraines may be increased due to the weather. Patient continues to have migraines but has 10-20 days of relief from Aimovig." (Tr. 1845). Under assessments it was noted that a three month supply prescription would be written to try and avoid the delay in administration of the Aimovig. (Tr. 1846).

In October 2020, Plaintiff was seen by phone by Dr. Stickler. "Headaches are better as long as he has the Aimovig." (Tr. 1843). Under work status, "not working/sedentary duty and advance as tolerated."

Plaintiff testified in December 2020 that he had migraines 10-20 days a month, which as

discussed above is consistent with contemporaneous treatment notes. (Tr. 56). Plaintiff testified he has to lay down. Plaintiff testified that Aimovig only lessens the number of days he has headaches, which is consistent with the contemporaneous treatment notes summarized above. (Tr. 61-62). Plaintiff testified that as long as he gets injections timely, he has headaches only 10-20 days a month, but that sometimes the Workers' Compensation insurance will not approve it in time and if it gets 5-20 days late he will have more migraines. (Tr. 62). "[I]nstead of being 24 hours, 7 days a week, it's 10 to 20 days, and it's you know, four to eight hours of migraine, and then it starts to relieve itself." (Tr. 62). Prior to that medication, Plaintiff had a headache every day 24 hours a day. (Tr. 62). Plaintiff testified his migraine triggers were reading, watching television, looking at a computer, bright lights, and stress. If he does any of those activities for thirty minutes, he will definitely get a migraine. (Tr. 62). During a migraine, Plaintiff turns off the lights, lays down, and tries to sleep. (Tr. 63). Plaintiff testified that with a migraine he could not concentrate. (Tr. 67).

  Plaintiff argues the RFC contains no limits accounting for the severity, frequency, and durations of Plaintiff's migraines and that the required discussion under SSR 19-4p is lacking. There is no explanation by the ALJ how the concentration issues in the prior RFC of one third off task were improved as a result of the findings in the January 29, 2020 physical FCE. The ALJ must consider whether Plaintiff can perform the RFC on a regular and continuing basis. 20 C.F.R. § 404.1545. SSR 96-8p explains that, "a 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." The ALJ's opinion is lacking in explanation of the impact of Plaintiff's migraine headaches, especially as to frequency, on Plaintiff's ability to sustain work activity on a regular and continuing basis. The ALJ does not note that Plaintiff's treating physician noted Plaintiff had 10-20 migraines per month <u>after</u> the "improvement" date. It is unclear what

11

changed on and after January 30, 2020 with respect to the limitations affecting Plaintiff from his severe migraine impairment. The ALJ found migraines were severe,[3] and Plaintiff's impairments could reasonably be expected to produce the alleged symptoms. (Tr. 34, 37). The ALJ did not discuss which symptoms were supported by the evidence and which were not as to migraines. Viewing the opinion as a whole, the ALJ cited to reports that medication helped and weather worsened migraines, but the ALJ failed to consider contemporaneous specialist treatment notes that the "improvement" with the new medication was from daily migraines to 10-20 migraine days a month.

The ALJ did not provide an accurate and logical bridge from the evidence to his finding. The ALJ is obligated to consider all evidence, not just that which is helpful to his decision. *Gordon v. Schweiker*, 725 F.2d 231, 235-36 (4th Cir. 1984); *Murphy v. Bowen*, 810 F.2d 433, 437 (4th Cir. 1987). Because the Court finds the ALJ's analysis with respect to the above issues is a sufficient basis to remand the case to the Commissioner, the undersigned does not specifically address Plaintiff's additional allegations of error. *See Boone v. Barnhart*, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on other grounds and declining to address claimant's additional arguments). Upon remand, the Commissioner should consider each of Plaintiff's allegations of error. All issues briefed by Plaintiff should be appropriately addressed on remand by the ALJ in accordance with the

---

[3] "[T]here will often be no "objective" evidence of migraine headaches." *See Robinson v. Colvin*, 31 F. Supp. 3d 789, 793 n1 (E.D.N.C. 2014)(*citing Duncan v. Astrue*, 2008 WL 111158 *7 (E.D.N.C. Jan. 8, 2008) (noting that migraine headaches are a condition that cannot be diagnosed or confirmed through laboratory or diagnostic testing and listing cases holding same); *Brownlee-Nobs v. Colvin*, No. 1:14-CV-03988-JMC, 2015 WL 5908524, at *15 (D.S.C. Oct. 7, 2015)("It is impossible to gauge ...the frequency of her migraines through any objective tests..."); *Harrington v. Colvin*, No. 7:15-CV-00020-FL, 2016 WL 320144, at *4 (E.D.N.C. Jan. 4, 2016), *report and recommendation adopted*, 2016 WL 311284 (E.D.N.C. Jan. 25, 2016)(an ALJ's reliance on normal imaging "merely suggests that the cause of her headaches cannot be identified through such testing, not that she does not suffer from headaches," citing cases that found "migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing).

applicable statutes, rules, regulations, and case law.

### III.  CONCLUSION

In conclusion, it may well be that substantial evidence exists to support the Commissioner's decision in the instant case. The court cannot, however, conduct a proper review based on the record presented. Accordingly, pursuant to the power of the Court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in social security actions under sentence four of Sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. Sections 405(g) and 1338(c)(3), the Commissioner's decision is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with this opinion

August 16, 2022  
Florence, South Carolina

s/ Thomas E. Rogers, III  
Thomas E. Rogers, III  
United States Magistrate Judge